UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

TANK BROS, LLC,                          :

        Plaintiff,                   :

                             CIVIL ACTION NO. 3:26-CV-922

      v.                              :

ACUANTIA, INC., and GRUPO                :
ROTOPLAS, S.A.B. DE C.V.,

                             (JUDGE MANNION)

        Defendants.                  :

                            :

## MEMORANDUM

Presently before the Court is Acuantia, Inc.'s ("Moving Defendant")

motion to dismiss Counts II-IX of Tank Bros, LLC's ("Plaintiff") Complaint.

(**Doc. 2**). For the reasons set forth below, Acuantia's motion will be

**GRANTED IN PART AND DENIED IN PART.**

## I.    BACKGROUND[1]

Plaintiff commenced the underlying action by filing a Complaint in the

Court of Common Pleas of Lackawanna County, Pennsylvania, against

Moving Defendant and Grupo Rotoplas, S.A.B. de C.V. (collectively,

"Defendants"), arising from a dispute in connection with a Representative-

---

[1] Because the Court is required to accept the facts pleaded in the
Complaint as true for purposes of this motion, the Court refers to the
Complaint for its factual background.

Distributor Agreement (the "Agreement") dated December 8, 2022. (Doc. 1-1 at 32). Thereafter, Defendants removed the matter to this Court pursuant to 28 U.S.C. §1441. (Doc. 1).

The Complaint alleges that Defendant Grupo Rotoplas, S.A.B. de C.V. ("Defendant Grupo Rotoplas") is the parent company of Moving Defendant. (Doc. 1-1, ¶8). Moving Defendant is a manufacturer and provider of plastic tanks for various industrial and commercial applications, and operates through multiple sales platforms with "centralized pricing, e-commerce infrastructure, call centers, and distribution logistics[.]" *Id.*, ¶¶5-6.

In September of 2022, Plaintiff was formed for the purpose of operating a Tank Depot distribution yard in northeastern Pennsylvania. *Id.*, ¶15. Prior to the execution of the Agreement, Moving Defendant provided Plaintiff with a sales heat-map date reflecting approximately eighteen months of sales within a proposed territory and engaged in negotiations regarding commission, territory, and the inclusion of drop-shipped products within the commission structure. *Id.*, ¶16. In such negotiations, Moving Defendant purportedly represented to Plaintiff that it would receive a protected territory, guaranteed commissions on all sales therein, and a "Partner Store" relationship. *Id.*, ¶19. On December 8, 2022, Plaintiff and Moving Defendant entered into the Agreement. *Id.* at 32.

- 2 -

Pursuant to the Agreement, Plaintiff was appointed as a non-exclusive representative and distributor of Moving Defendant's products, subject to a specifically defined territory: a 500-mile diameter surrounding 701 Hudson Avenue, Scranton, Pennsylvania 18504. *Id.* at 32, 36. The Agreement guaranteed Plaintiff a 15% commission rate based on total invoiced revenue. *Id.* at 33. Pursuant to the Agreement, Moving Defendant "shall not appoint any other distributor, agent or representative to sell the [p]roducts to customers in the [t]erritory without the express permission of [Plaintiff] and shall not itself sell the [p]roducts to customers in the territory." *Id.* at 36. Additionally, the parties agreed that that they would not "directly, or indirectly, interfere with, circumvent, attempt to circumvent, avoid or bypass any [p]arty from any [t]ransactions between the [p]arties' contracts, or obviate or interfere with the relationship of any [p]arty and its contacts for the purpose of gaining any benefit, whether such benefit is monetary or otherwise." *Id.* at 35.

According to Plaintiff, the business relationship was labeled as that of independent contractors, but the actual course of dealing created a franchise-like relationship—Defendants exercised substantial control over Plaintiff's operations including pricing, sales channels, and reporting requirements. (Doc. 1-1, ¶¶30-31). Plaintiff alleges that while its location was

merely a "distribution stockyard" in the beginning, Defendants started to shift operational burdens onto Plaintiff. *Id.*, ¶¶32-33. Additionally, Plaintiff alleges that Defendants' leadership expressly stated that it needed to "raise profitability in the yards," "made a bad deal with Scranton," and that it would be shifting burdens to Plaintiff to improve financial performance. *Id.*, ¶34.

Plaintiff alleges that after commencing operations, in or about February of 2023, Plaintiff repeatedly observed orders within its territory that did not ship from its yard, and requested information from Defendants, who "minimized the issue and failed to provide direct answers." *Id.*, ¶¶37-38. Additionally, "products stocked by Plaintiff were nonetheless drop-shipped" by Defendants directly into the Agreement territory. *Id.*, ¶39. As such, Plaintiff alleges that it has suffered substantial economic damages "including lost commissions, lost profits, and damage to goodwill." *Id.*, ¶51. Plaintiff avers that the Agreement remains in full force and effect. *Id.*, ¶29.

Based on the foregoing, Plaintiff's Complaint alleges breach of express contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), unjust enrichment in the alternative to the breach of express contract claim (Count III), tortious interference with contractual and business relations (Count IV), fraud and fraudulent inducement (Count V), breach of fiduciary duty (Count VI), civil conspiracy (Count VII), conversion (VIII), and

- 4 -

negligence (IX). (Doc. 1-1 at 14-31). After removing the case to this Court, on April 17, 2026, Moving Defendant filed the instant motion to dismiss. (Doc. 2). On May 1, 2026, Moving Defendant filed a brief in support of its motion. (Doc. 3). On May 29, 2026, Plaintiff filed a brief in opposition, and on June 12, 2026, Moving Defendant filed a reply brief. (Docs. 8, 9). This matter is now ripe for disposition.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that contains only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a

claim to relief that is plausible on its face." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the Court at this stage accepts the complaint's factual allegations as true. This tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Determining whether a complaint

- 6 -

states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts "conduct a two-part analysis:"

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

In considering a motion to dismiss, the Court generally relies on the Complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are

- 7 -

alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

## III.    DISCUSSION

Moving Defendant argues that the following claims should be dismissed from Plaintiff's Complaint: breach of implied covenant of good faith and fair dealing (Count II), unjust enrichment in the alternative to the breach of express contract claim (Count III), tortious interference with contractual and business relations (Count IV), fraud and fraudulent inducement (Count V), breach of fiduciary duty (Count VI), civil conspiracy (Count VII), conversion (VIII), and negligence (IX). (Doc. 3 at 2-3). In other words, Moving Defendant requests that this Court dismiss all but Count I of Plaintiff's Complaint. The Court addresses each in turn.

### a. Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

§205 of the Restatement (Second) of Contracts provides: "Every contract imposes upon each party a duty of good faith and fair dealing in its

performance and its enforcement." (1981). While the Pennsylvania Supreme Court has not formally adopted §205, federal courts applying Pennsylvania law have predicted that it would if it were presented the opportunity. *Haywood v. Univ. of Pittsburgh*, 976 F.Supp.2d 606, 626 (W.D.Pa. 2013) (internal citations omitted).

Moving Defendant argues that Pennsylvania does not recognize a separate breach of contractual duty of good faith and fair dealing claim because it is otherwise subsumed by a separately pled breach of contract claim. (Doc. 3 at 5). To support its argument, Moving Defendant cites the *Haywood* case. 976 F.Supp.2d at 627. In that case, an employment contract provided the University with the ability to terminate an employee with "just cause." *Id.* The contract defined "just cause" as "determined by the University, any conduct of Employee that is seriously prejudicial to the best interest of the University . . ." *Id.* The University argued that the employee could not prove that it violated its duty to act in good faith because the employment contract expressly provided the University with the discretion to determine that just cause existed to terminate him. *Id.* at 628.

The court noted that when a party has discretion to act under a contract, the implied duty of good faith requires the party to "reasonably exercise that discretion." *Id.* Because the implied duty of good faith cannot

"override the express terms of a contract[,]" the court held that the duty to act reasonably did not conflict with the University's right to terminate the employee. *Id.* Because the duty of good faith and fair dealing was subsumed by the University's contractual obligations, the court subsequently granted summary judgment in the University's favor. *Id.* at 646.

Despite such an outcome,

> Nothing in the case law . . . bars a plaintiff from bringing a cause of action for breach of contract and a cause of action for breach of the duty of good faith and fair dealing when those two actions are based on separate conduct. *See Clunie-Haskins v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 380, 388 (E.D. Pa. 2012) ("Here, however, the conduct forming the basis of Plaintiffs' breach of contract claim—the failure to defend or indemnify—is not the same conduct as their claim for breach of the duty of good faith and fair dealing ... Consequently, Plaintiffs' two claims do not merge."). Instead, because a good faith and fair dealing claim is a breach of contract claim, **Pennsylvania law simply bars a plaintiff from bringing both a breach of contract claim and a bad faith claim based on the same conduct.** *See King of Prussia Equip. Corp. v. Power Curbers, Inc.*, 158 F. Supp. 2d 463, 467 (E.D. Pa. 2001) ("Because the actions forming the basis of [the plaintiff's] breach of contract claim and its good faith and fair dealing claim are essentially the same, [the plaintiff] cannot pursue both causes of action."); *Smith v.*

- 10 -

*Allstate Ins. Co.*, 904 F. Supp. 2d 515, 522 (W.D. Pa. 2012) (noting that "claims for breach of the contractual duty of good faith and fair dealing have been dismissed where Plaintiff also asserts a claim for breach of contract and Plaintiff's claim for breach of the duty of good faith and fair dealing is redundant.").

*Slamon v. Carrizo (Marcellus) LLC*, 3:16-CV-2187, 2017 WL 3877856 at *8, (M.D.Pa. Sept. 5, 2017) (emphasis added).

In *Slamon*, a plaintiff brought a breach of contract claim, arguing that the defendants' breached a lease "by (i) deducting DTE's fee and post-production costs; (ii) paying Royalties that are lower than the NYMEX spot price and/or the local market price; (iii) paying Royalties based on different prices for gas taken from the same well during the same month; and (iv) paying Royalties based on an improper conversion from MMBtu to Mcf." *Id.* In contrast, the plaintiff's claim for breach of the duty of good faith and fair dealing alleged that the defendants "acted in bad faith by accepting sale prices under their contracts with DTE that were well below a competitive market price." *Id.* In other words, the plaintiff pleaded that even if the defendants were entitled to pay him royalties based on the sale price of gas to DTE, "they breached a duty, implied in the contract, to exercise their discretion in a reasonable way by obtaining a competitive market price for

- 11 -

the natural gas." *Id.* The court held that this was a distinct theory of breach and was not subsumed by the plaintiff's other breach of contract claims. *Id.* Accordingly, the defendants' motion to dismiss was denied. *Id.*

Here, the circumstances are quite similar to those in *Slamon*. Plaintiff alleges that not only did Moving Defendant breach the express contract by selling products to customers within Plaintiff's designated territory, but it also breached the implied covenant of good faith and fair dealing by breaching its "duty to exercise its contractual discretion honestly, reasonably, and in good faith, and not to evade the spirit of the Agreement through opportunistic or deceptive conduct." (Doc. 1-1 at 13). The basis for the breach of the implied covenant of good faith and fair dealing claim is distinct because it takes a step beyond the mere breach of contract claim—it alleges affirmative, bad faith conduct in an attempt to sabotage Plaintiff's course of business. (Doc. 1-1 at 13). Accordingly, Moving Defendant's argument that the breach of the implied covenant of good faith and fair dealing claim is subsumed by the separately pled breach of contract claim fails, and the motion to dismiss Count II of the Complaint will be denied. *Slamon*, 2017 WL 3877856 at *8.

### b. Count III: Unjust Enrichment

Defendant next argues that Count III of the Complaint should be dismissed. An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law. *Sevast v. Kakouras,* 915 A.2d 1147, 1153 n. 7 (Pa. 2007). When a plaintiff claims unjust enrichment, he is required to "show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Bair v. Purcell,* 500 F.Supp.2d 468, 499 (M.D.Pa. 2007) (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987)).

Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such benefits by the defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value. *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 447 (3d Cir. 2000). Here, Moving Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because it is barred by Plaintiff's breach of contract claim (Doc. 3 at 6).

- 13 -

As a general matter, "Federal Rule of Civil Procedure 8(d) expressly permits pleading in the alternative; therefore, the fact that [Plaintiff] has pleaded the existence of a contract is not a basis for dismissing, on a Rule 12(b)(6) motion, an unjust enrichment claim." *Grasso Foods, Inc. v. Wynn Env't Sales Co.*, No. CV 17-6430 (RMB/AMD), 2018 WL 3455479, at *4 (D.N.J. July 18, 2018). Under Pennsylvania law, however, "a plaintiff may not recover under a theory of unjust enrichment if the parties' relationship is governed by a written contract, though they may plead this claim in the alternative when there is a dispute about the existence or validity of a contract." *Buccigrossi v. Thomas Jefferson Univ.*, No. 21-CV-0221-JMY, 2022 WL 1093127, at *4 (E.D.Pa. Apr. 12, 2022).

In *Innospec Fuel Specialties, LLC v. Isochem N. Am., LLC*, the court held that when the "defendant has not yet answered the Complaint," he or she "has not yet admitted to the existence and enforceability of the contract." No. CV 10-1642 (AET), 2010 WL 11570284, at *4 (D.N.J. Aug. 23, 2010). When the existence and enforceability of a contract are not yet confirmed by the moving party, "the Court will not assume, upon a motion to dismiss, that the contract will be found to be valid and enforceable." *Id.* at *4. "By allowing parties to plead inconsistent theories of recovery, [Federal Rule of Civil Procedure 8(d)] safeguards the pleader from foregoing potentially

- 14 -

meritorious claims while he or she is still 'legitimately uncertain as to the relevant facts.'" *Kindred Hosps. E., LLC v. Keystone Fam. Health Plan*, No. CV 25-1563, 2026 WL 370946, at *4 (E.D.Pa. Feb. 10, 2026) (internal citations omitted).

In *Lomma v. Ohio Nat'l Life Assurance Corp.*, the Middle District of Pennsylvania granted a motion to dismiss an unjust enrichment claim. 283 F.Supp.3d 240, 265 (M.D.Pa. 2017). In that case, the Honorable Robert D. Mariani reasoned:

> Plaintiffs' Complaint alleges the existence of an express written contract between Ms. Lomma and the Defendants, [who] do not deny that the Replacement Policy is a valid, written, enforceable contract. Because it is undisputed that the relationship between the parties is governed by an express written contract, Plaintiffs' claims for unjust enrichment . . . must necessarily fail.

*Id.* (internal citations and quotation marks omitted).

Here, it appears that Moving Defendant does "not deny that the [Agreement] is a valid, written, enforceable contract." *Lomma*, 283 F.Supp.3d at 265. Recognizing that a valid and enforceable written contract exists between Plaintiff and Moving Defendant, the Court agrees with Moving Defendant that an unjust enrichment action cannot proceed against Moving Defendant in the face of a fully-executed, express contract between itself

- 15 -

and Plaintiff. *See Rahemtulla v. Hassam*, 539 F.Supp.2d 755, 781 (M.D.Pa. 2008).

However, the existence and validity of the contract has not been acknowledged, and therefore left undisputed, by Defendant Grupo Rotoplas. (Doc. 1-1 at 3). Accordingly, because Plaintiff is not in contractual privity with Defendant Grupo Rotoplas, Plaintiff's claim for unjust enrichment may proceed against it. *See Rahemtulla*, 539 F.Supp.3d at 781 (citing *Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392, 420 (E.D.Pa. 2006) (allowing claims for unjust enrichment to proceed against defendants who were not parties to the original contract)).

Therefore, Moving Defendant's motion to dismiss Count III of the Complaint will be granted to the extent it applies to Moving Defendant and denied to the extent it applies to Defendant Grupo Rotoplas.

### c. Gist of the Action Doctrine: Counts IV through IX

Moving Defendant alleges that Plaintiff's tort claims, Counts IV through IX, should be dismissed based upon the "gist of the action" doctrine. (Doc. 3 at 7-8).[2] The gist of the action doctrine precludes recovery in tort where (1)

---

[2] Moving Defendant also argues in a footnote that Counts IV through IX are barred by the "economic loss doctrine." (Doc. 3 at 7). The economic loss doctrine bars "plaintiffs from recovering in tort economic losses to which

*(footnote continued on next page)*

- 16 -

liability arises solely from the contractual relationship between the parties; (2) the alleged duties breached were grounded in the contract itself; (3) any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim depends upon the success of the breach of contract claim. *Sarsfield v. Citimortgage, Inc.*, 717 F.Supp.2d 546, 553 (M.D.Pa. 2010) (internal citations omitted).

Pennsylvania courts distinguish between claims arising from duties imposed by contract and those arising from broader social policies embodied in tort duties. *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa.Super. 2007). Indeed, the Pennsylvania Superior Court has stated:

> Pennsylvania courts must review each claim individually to determine whether the plaintiff has alleged or offered sufficient proof (depending on the stage of the proceedings) that the defendant breached the **particular** duty (tort or contractual)

their entitlement flows *only* from a contract." *Debbs v. Chrysler Corp.*, 810 A.2d 137, 164 n. 32 (Pa.Super. 2002) (emphasis added). However, the doctrine does not apply when a defendant breaches a duty imposed by law independent of any contractual obligations. *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018). Because Plaintiff alleges tortious conduct beyond the breach in obligations set forth in the Agreement, Moving Defendant's economic loss doctrine argument fails.

for each ***particular*** claim. If so, the claim proceeds to trial. Courts should keep in mind that there are instances when a single gist of the action (one unlawful act) breaches ***both*** a general duty of care, as well as an expressed or implied contractual duty. While double recovery for the same unlawful act is generally prohibited, multiple claims can proceed to trial, if timely filed.

*Swatt v. Nottingham Village*, 342 A.3d 23, 58 (Pa.Super. 2025) (emphasis in the original) (citing *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 116 (Pa. 2014) (holding that because the "allegations of negligence facially concern[ed] [a defendant's] alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself," the negligence claim was not barred by the gist of the action doctrine).

This Court's inquiry therefore turns on whether Plaintiff has pleaded sufficient facts to plausibly support that each claim arises out of conduct which breached a tort duty beyond those outlined in the Agreement. *Swatt,* 342 A.3d at 58; *see also Vantage Learning,* 246 F.Supp.3d at 1101. We address each tort claim in turn—first on the gist of the action doctrine, and when applicable, on the merits.

### i. Count IV: Tortious Interference with Contractual and Business Relations

Moving Defendant first claims that Count IV is barred by the gist of the action doctrine. As Moving Defendant correctly notes, "[a] tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it." ((Doc. 3 at 8-9) (quoting *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F.Supp.3d 225. 243 (E.D.Pa. 2017)). However, Moving Defendant states nothing more about how the gist of the action doctrine should be applied to this particular claim, nor does it argue that Plaintiff's claim is not independent of a contract claim pleaded along with it. We cannot grant Moving Defendant's motion to dismiss Count IV on these grounds. Accordingly, the Court turns to Moving Defendant's argument that Count IV fails on the merits.

The Restatement (Second) of Torts §766 states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a **third person** by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

(1979) (emphasis added). The Pennsylvania Supreme Court has adopted the Second Restatement. *PennEnergy Resources, LLC v. Winfield Resources, LLC*, 301 A.3d 439, 459 (Pa.Super. 2023) (citing *Adler, et al.*, 393 A.2d 1175 (Pa. 1978)).

"[T]o state a claim for tortious interference with contract, a plaintiff must first allege there was an existing contract in place." *Wurth Baer Supply Co. v. Strouse*, 627 F.Supp.3d 422, 434 (M.D.Pa. 2022). A tortious interference with contract claim will only lie where a defendant has interfered with a plaintiff's contract with a *third party. Labalockie v. Capital Area Intermediate Unit*, 926 F.Supp. 503, 509 (M.D.Pa. 1996) (citing *Daniel Adams Associates v. Rimbach Publishing, Inc.*, 519 A.2d 997, 1000–01 (Pa.Super. 1987)) (emphasis in original); *see also Motise v. Parrish,* 297 Fed.Appx. 149, 152 (3d Cir. 2008) ("[A] party to the contract, may not tortiously interfere with the contract."). "Thus, a corporation's agents or employees generally cannot, as a matter of law, tortiously interfere with the corporation's own contracts." *Whaumbush v. Cty. of Philadelphia*, 747 F.Supp.2d 505, 513 (E.D.Pa. 2010) (citing *Labalockie*, 926 F.Supp. at 509).

Here, the question becomes whether Plaintiff has pleaded sufficient facts to show that Defendants tortiously interfered with a contract between Plaintiff and a third party. Moving Defendant argues that Plaintiff failed to

- 20 -

allege that it had any specific contract with a third party, therefore, Count IV should be dismissed. (Doc. 3 at 11). However, the Complaint states:

> Plaintiff had **existing contractual and prospective business relationships** with customers and leads within the [t]erritory, including customers generated through Plaintiff's marketing, sales efforts, and local presence . . . Defendants knew of these contractual and business relationships and knew that such relationships were central to Plaintiff's role under the Agreement . . . Despite this knowledge, Defendants intentionally and improperly interfered with Plaintiff's contractual and business relationships, including but not limited to . . . [d]irectly selling and drop-shipping products to customers in the [t]erritory in violation of Plaintiff's exclusive commission rights[.]

(Doc. 1-1 at 19) (emphasis added). A plain reading of the Complaint indicates that Plaintiff sufficiently pleaded the existence of third-party contracts with which Moving Defendant allegedly interfered. However, to the extent Moving Defendant argues that the Complaint is imprecise in that it did not enumerate each individual contract, the argument will be rejected. *See Devon Robotics v. Deviedma*, 09-CV-3552, 2009 WL 4362822 at \*7 (E.D.Pa. Nov. 30, 2009) ("[The plaintiff] has pled that it had several validation contracts with different hospitals, that [the defendant] purposefully interfered with those contracts for his own benefit, without justification, and that as a result, [the plaintiff] lost

- 21 -

substantial amounts of business. These pleadings are sufficient to establish a claim for tortious interference with existing contractual relations."). Accordingly, Moving Defendant's motion to dismiss Count IV of the Complaint will be denied.

### ii. Count V: Fraud and Fraudulent Inducement

Moving Defendant next claims that Count V is barred by the gist of the action doctrine. Specifically, it argues that any representations it made to Plaintiff prior to the Agreement were subsequently added to the Agreement in writing. (Doc. 3 at 9). Accordingly, Moving Defendant argues that Plaintiff cannot premise a fraudulent inducement claim on a purported misrepresentation when it was nonetheless incorporated into the Agreement. *Id.*

"Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims." *Downs v. Andrews*, 639 Fed.Appx. 816, 820 (3d Cir. 2016). Numerous district courts have recognized that "fraud in the inducement of a contract would not necessarily be covered by the gist of the action doctrine because fraud to induce a person to enter into a contract is generally collateral to (i.e., not 'interwoven' with) the terms of the contract

- 22 -

itself." *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F.Supp.2d 329, 341 (E.D.Pa. 2003).

However, recognizing that Pennsylvania is without a bright line rule, some courts have held that fraudulent inducement claims based on duties that parties identified in the contract are barred by the gist of the action doctrine. *See Vives v. Rodriguez,* 849 F.Supp.2d. 507, 518–20 (E.D.Pa.2012) (holding that a fraudulent inducement claim is barred by the gist of the action doctrine); *Wen v. Willis,* 117 F.Supp.3d. 673, 681 (E.D.Pa.2015) ("[W]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract," the claim may be dismissed under the gist of the action doctrine) (quoting *Integrated Waste Sol'ns, Inc. v. Goverdhanam,* No. 10–2155, 2010 WL 4910176, at *11 (E.D.Pa. Nov. 30, 2010)).

In *First United Bank & Trust v. PNC Financial Services Group, Inc.*, the Middle District of Pennsylvania applied the gist of the action doctrine to pre-agreement misrepresentations. 667 F.Supp.2d 443, 450 (M.D.Pa. 2009). Finding that the representations and duties detailed in the agreement concerned the same facts and circumstances that the plaintiff alleged were misrepresented to induce it to enter the agreement in the first instance, the

- 23 -

court held that the gist of the action doctrine barred allegations of fraudulent inducement. *Id.*

However, in another case which is relevant and distinguishable here, the Superior Court of Pennsylvania declined to extend the gist of the action doctrine when a plaintiff alleged that a defendant "fraudulently and/or negligently agreed to perform obligations **that it never intended to perform** in order to induce [the plaintiff] to agree to the proposed changes to his compensation package and to forgo an immediate resignation." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa.Super. 2005) (emphasis added). The court concluded that "since [the plaintiff's] tort claims relate[d] to the inducement to contract, they [were] collateral to the performance of the contracts and therefore, are not barred by the gist-of-the action doctrine." *Id.*

Here, the circumstances are similar to those in *Sullivan*. Plaintiff alleges that:

> In or about September through December 2022, and prior to the execution of the Agreement, Defendants, through their officers, executives, sales representatives, and agents, made material representations of fact to Plaintiff concerning the nature of the parties' relationship and Plaintiff's rights under the proposed Agreement . . . Specifically, Defendants represented, inter alia, that:

- 24 -

a) Plaintiff would be guaranteed a protected [t]erritory in which Defendants would not sell products directly to customers;

b) Plaintiff would receive a guaranteed commission of fifteen percent (15%) on all sales within the [t]erritory, regardless of fulfillment method;

c) Plaintiff would operate as a "Partner Store" and authorized distributor, akin to a franchise-style relationship;

d) Defendants would not circumvent Plaintiff by drop-shipping products directly into the [t]erritory or diverting sales channels; and

e) Plaintiff's investment in facilities, staffing, and local market development would be supported and protected by Defendants.

. . . Upon information and belief, Defendants intended, at the time of contracting, to continue selling and drop-shipping products directly into Plaintiff's [t]erritory because such sales were more profitable for Defendants and aligned with Defendant's internal financial objections and parent-company profitability mandates . . . Defendants further intended to retain centralized control over sales channels, call routing, e-commerce systems, and transactional data in order to circumvent Plaintiff's commission rights while maintaining the appearance that the Agreement remained in force . . . Defendants made the foregoing representations with the intent to induce Plaintiff to enter into the Agreement and to invest

> substantial capital, labor, facilities, inventory, and goodwill into
> Defendants' distribution network . . . Plaintiff justifiably relied
> on Defendants' representations in executing the Agreement.

(Doc. 1-1 at 21-22).

Plaintiff alleges that Moving Defendant "fraudulently . . . agreed to perform obligations that it never intended to perform in order to induce [Plaintiff] to" execute the Agreement. *Sullivan*, 873 A.2d at 719. On that basis, Plaintiff's claim of fraudulent inducement may proceed. Accordingly, Moving Defendant's motion to dismiss Count V of the Complaint will be denied.

### iii. Count VI: Breach of Fiduciary Duty

Moving Defendant next argues that Count VI is barred by the gist of the action doctrine. "To allege a breach of fiduciary duty, a plaintiff must establish that a fiduciary or confidential relationship existed between her and the defendants." *Slamon*, 2017 WL 3877856, at *10 (quoting *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006)). Additionally:

> Although no precise formula has been devised to ascertain the
> existence of a confidential relationship, it has been said that
> such a relationship is not confined to a particular association
> of parties but exists whenever one occupies toward another

- 26 -

such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest.

Slamon, 2017 WL 3877856, at *10 (quoting Silver v. Silver, 219 A.2d 659, 662 (Pa. 1966)). Moving Defendant aptly notes that "[a] breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." (Doc. 3 at 9) (quoting DePuy, 259 F.Supp.3d at 234).

As explained by the Pennsylvania Supreme Court:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e[.], a specific promise to do something that [a] party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract [ . . . ] If, however, the facts establish that the claim involves the violation of a broader social duty owed to all individuals, which is imposed by law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

DePuy, 259 F.Supp.3d at 234 (quoting Bruno, 106 A.3d at 68). "First, . . . claims for breach of fiduciary duty are not barred if the fiduciary duty at issue goes 'beyond the particular obligations contained in' the parties' contract." DePuy, 259 F.Supp.3d at 234-35 (internal citations omitted). "Second, . . .

- 27 -

breach of fiduciary duty claims are barred by the gist of the action doctrine if there are 'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of' the parties' contractual agreements." *Id.*

The Court must determine whether Plaintiff's breach of fiduciary duty claims are based on duties existing outside those established by the contract. The Complaint alleges:

> Defendants breached their fiduciary duties by engaging in self-interested and disloyal conduct, including knowingly diverting sales within Plaintiff's [t]erritory to Defendants' internal sales channels, drop-shipping products directly into the [t]erritory to avoid paying commissions, concealing the true volume of sales occurring within the [t]erritory, and retaining commissions and revenues rightfully owed to Plaintiff . . . Defendants further breached their fiduciary duties by withholding material information, restricting Plaintiff's access to sales and fulfillment data, and failing to provide a full and accurate accounting, thereby preventing Plaintiff from protecting its interests and enforcing its rights . . . Defendants acted to advance their own financial interests and profitability, including parent-company objectives, at Plaintiff's expense, while continuing to hold Plaintiff out as an authorized partner store and benefitting from Plaintiff's investments in facilities, staffing, and market development.

(Doc. 1-1 at 25). The breach of fiduciary duty claims enumerated in the Complaint mirror, in almost identical fashion, the obligations of the Agreement which forms the basis of the breach of contract claim. Specifically, the Agreement states that the parties shall not "directly or indirectly, interfere with, circumvent, attempt to circumvent, avoid or bypass any [p]arty from any [t]ransactions between the parties' contacts, or obviate or interfere with the relationship of any [p]arty and its contacts for the purpose of gaining any benefit, whether such benefit is monetary or otherwise." (Doc. 1-1 at 35). The allegations stated in the Complaint are, in one form or another, alleged breaches of this term of the Agreement.

The Complaint does not identify any obligation not contemplated by the Agreement. Accordingly, "the fiduciary duties in question are inextricably intertwined with, and not collateral to, the employment agreements in question." *DePuy*, 259 F.Supp.3d at 236-37 (citing *Brown & Brown, Inc. v. Cola*, 745 F.Supp.2d 588 (E.D.Pa. 2010). Accepting Plaintiff's facts to support Count VI of the Complaint as true, the Court finds that the breach of fiduciary duty claim is legally barred by the gist of the action doctrine. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). "As the breach of fiduciary duty claim is not legally viable, it must be dismissed from the

- 29 -

case." *DePuy,* 259 F.Supp.3d at 238. Moving Defendant's motion to dismiss Count VI will therefore be granted.

### iv.  Count VII: Civil Conspiracy

Moving Defendant next argues that Count VII of the Complaint should be dismissed because all of Plaintiff's other tort claims are barred by the gist of the action doctrine, so the civil conspiracy claim cannot stand. (Doc. 3 at 10). However, the Court has already determined that the gist of the action doctrine does not bar *all* of Plaintiff's other tort claims. Therefore, this argument fails.

In the alternative, Moving Defendant argues that the civil conspiracy claim should be dismissed because "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." (Doc. 3 at 13) (quoting *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437,441 (Pa.Super. 2005) (internal quotations omitted)). Here, the Complaint alleges that "Defendants, [Moving Defendant] and [Defendant] Grupo Rotoplas . . . acted in concert and entered into an agreement and common plan to wrongfully deprive Plaintiff of commissions and economic benefits arising from sales within Plaintiff's designated [t]erritory." (Doc. 1-1 at 26). Moving Defendant is a Florida corporation operating individually and as, *inter alia*, The Tank Depot/Tank Depot, Plastic-

Mart.com, and PlasticWaterTanks.com. *Id.* at 7. Defendant Grupo Rotoplas is a foreign corporation headquartered in Mexico City, Mexico, and is the parent company and controlling entity of Moving Defendant. *Id.* at 8.

The issue is whether a parent company and subsidiary can conspire with each other for purposes of establishing a civil conspiracy claim. Plaintiff argues that "the fact that [Defendant] Grupo Rotoplas . . . may be a parent, affiliate, or related corporate entity of Moving Defendant does not, at this preliminary stage, render the entities legally incapable of conspiring with one another as a matter of law[.]" (Doc. 8 at 23). However, this is not so. "It is well-settled that a corporation cannot conspire with its subsidiaries, its agents or its employees[.]" *Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 856 F.Supp. 990, 1009 (E.D.Pa. 1994). "It is, of course, counterintuitive to accept the proposition that a parent corporation can conspire with its subsidiary. Thus, the Supreme Court has held in its antitrust jurisprudence that a parent and subsidiary are incapable of conspiring." *Michael v. Shiley, Inc.*, 93-CIV-1729, 1994 WL 59349 at *15 (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731 (1984)).

Accordingly, because the relationship between Moving Defendant and Defendant Grupo Rotoplas are that of subsidiary and parent-company, the entities are incapable of conspiring with one another. *Siegel*, 856 F.Supp. at

1009. Given that Plaintiff's allegation constitutes a legal impossibility, it must be dismissed—Moving Defendant's motion to dismiss Count VII of the Complaint will be granted.

### v. Count VIII: Conversion

Moving Defendant next alleges that the gist of the action doctrine precludes Plaintiff's recovery under a conversion claim. (Doc. 3 at 8). Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property in, or use or possession of a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Rahemtulla*, 539 F.Supp.2d at 777 (quoting *Universal Premium Acceptance Corp. v. York Bank & Trust Co.,* 69 F.3d 695, 704 (3d Cir.1995)); *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa.Super. 2000). Money may be the subject of conversion, however the rights to the money must have originally belonged to the plaintiff. *McKeeman,* 751 A.2d at 659; *Pittsburgh Const. Co. v. Griffith,* 834 A.2d 572, 581 (Pa.Super. 2003).

Courts have applied the gist of the action doctrine to conversion claims when entitlement to the chattel is predicated solely by an agreement between the parties. *See, e.g., Murphy v. Mid East Oil Co.,* 2007 WL 527715, at *5–6 (W.D.Pa. Feb. 14, 2007) (dismissing conversion claim because it was dependent on the defendant's noncompliance with the terms of the

agreements); *Montgomery v. Fed. Ins. Co.,* 836 F.Supp. 292, 301–02 (E.D.Pa. 1993) (dismissing conversion claim because of, *inter alia,* the "firmly accepted . . . doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of contract"); *Pittsburgh Const. Co. v. Griffith,* 834 A.2d 572, 584 (Pa.Super. 2003) (stating that where success of the conversion claim "depend[s] entirely on the obligations as defined by the contract," the "gist of the action" doctrine applies).

Here, the Complaint bases its conversion claim entirely on Plaintiff's property interests established by the Agreement:

> At all relevant times, Plaintiff possessed a present, immediate, and vested property interest in commissions earned on sales of Defendants' products occurring within Plaintiff's designated [t]territory, including commissions calculated as a fixed percentage of invoiced revenue . . . These earned commissions constituted specific, identifiable funds that were capable of being calculated, segregated, and paid, and were not merely an abstract expectancy or unliquidated contractual claim.

(Doc. 1-1 at 28). In this case, the gist of Plaintiff's conversion claim lies in contract, not tort, because it arises out of Moving Defendant's alleged nonperformance of contractual obligations set forth in the Agreement.

- 33 -

Because any rights Plaintiff might have to commissions are defined by the terms of the Agreement by a fixed percentage, it cannot sue in tort for conversion of that money. Accordingly, Moving Defendant's motion to dismiss Count VIII will be granted.

### vi.  Count IX: Negligence

Moving Defendant finally alleges that the gist of the action doctrine precludes recovery under a negligence claim because "[Plaintiff's] . . . negligence claim[ is] . . . premised on the same core set of alleged contractual conduct (*i.e.*, the purported diversion of sales opportunities within the [t]erritory to Defendants' internal sales team)." (Doc. 3 at 8). To support its proposition, Moving Defendant cites to *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, in which the Eastern District of Pennsylvania held that the "[p]laintiff's claim [was] based entirely on the terms of the Agreement because it [was] predicated upon the performance of contractual duties imposed by the parties' 'mutual consensus' rather than by 'the breach of duties imposed as a matter of social policy.'" 246 F.Supp.3d 1097, 1101 (E.D.Pa. 2017). "Because [the plaintiff did] not allege the breach of a public duty arising under tort law, [the p]laintiff's negligence claim is barred under the gist of the action doctrine." *Id.*

- 34 -

Here, the Complaint states that:

> By undertaking to design, implement, and operate [sales, call-routing, e-commerce, etc.,] in a manner that directly affected Plaintiff's ability to earn commissions and operate its business, Defendants owed Plaintiff a duty to exercise reasonable care in the administration, maintenance, and oversight of those systems . . . Defendants further owed Plaintiff a duty to act with reasonable care in providing accurate sales information, properly routing customer inquiries, and ensuring that sales within Plaintiff's [t]erritory were not negligently misdirected, misclassified, or omitted from commission calculations . . . Defendants breached their duties of care by, inter alia, negligently misrouting customer calls and web inquiries away from Plaintiff, negligently failing to ensure that orders within the [t]erritory were properly attributed and recorded, negligently administering drop-shipment practices without safeguards to protect Plaintiff's commission rights, and negligently restricting Plaintiff's access to sales data necessary to identify and correct errors.

(Doc. 1-1 at 30). Plaintiff later alleges that "Defendants' negligence was independent of and collateral to Defendants' contractual obligations and arose from Defendants' voluntary assumption of control over operational systems and information uniquely within Defendants' possession." *Id.* However, a plain reading of the Complaint indicates Moving Defendant's

- 35 -

duties arise solely from the parties' Agreement and would not exist outside that contractual relationship. What is more, in its opposition to Moving Defendant's motion, Plaintiff fails to identify any case law to support its contention that Moving Defendant had a duty, beyond that imposed by the Agreement to provide commissions, disclose sales information, and route customer opportunities through Plaintiff.

Accordingly, because "Plaintiff does not allege the breach of a *public duty* arising under tort law, Plaintiff's negligence claim is barred under the gist of the action doctrine." *Vantage Learning*, 246 F.Supp.3d 1097, 1101 (E.D.Pa. 2017) (emphasis added). The Court notes that Defendant Grupo Rotoplas was not a party of the Agreement. Thus, Moving Defendant's motion to dismiss Count IX will be granted to the extent it applies to Moving Defendant, and denied to the extent it applies to Defendant Grupo Rotoplas.

## IV.   CONCLUSION

Accepting all of the facts alleged in the Complaint as true, Plaintiff failed to plead "enough facts to state a claim to relief that is plausible" with respect to certain Counts. *Hedges*, 404 F.3d at 750; *Twombly*, 550 U.S. at 570. For

- 36 -

the reasons set forth herein, Moving Defendant's motion to dismiss **(Doc. 2)**, will be **GRANTED IN PART AND DENIED IN PART.**

The motion will be **GRANTED** for Counts VI, VII, and VIII of the Complaint, and **DENIED** for Counts II, IV, and V of the Complaint. For Counts III and IX of the Complaint, the motion will be **GRANTED** to the extent it applies to Moving Defendant and **DENIED** to the extent it applies to Defendant Grupo Rotoplas. An appropriate order will be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 7/16/26

26-922-01

- 37 -